UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| In re: TAMMY D. AARON, | ) | Bankruptcy Case No. 14-15683 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | |
| UNITED TRANSFER, INC. | ) | Adv Case No. _____ |
| Plaintiff | ) | |
| v. | ) | DuPage County Case (Geneva) |
| | ) | |
| TAMMY AARON, | ) | Hon. Judge Donald Cassling |
| Defendant. | ) | |

**Complaint to Determine Nondischargeability of the Debtor's Debt
under 11 USC § 523 and for Other Relief**

**NOW COMES** Plaintiff United Transfer, Inc. ("United") by its attorneys John N. Dore and James M. Dore, and in complaining of the Defendant TAMMY AARON ("Aaron"), states:

**Parties**

1. At all times relevant to this proceeding, United was an Illinois corporation that was in the business of accepting, sorting, and processing miscellaneous waste and other materials in Cook County, Illinois..

2. Lorence is an individual residing in Illinois who operated a business, in 2004 and after, that collected and deposited miscellaneous waste and recyclable materials at transfer stations and/or recycling facilities.

3. Unique Green was an Illinois limited liability company that operates a business that collects and deposits miscellaneous waste and recyclable materials at transfer stations and/or recycling facilities.

4. Unique Green was incorporated and organized in May 2008.

5. Aaron is an individual residing in Illinois who is a nominal member and nominal manager of Unique Green.

1

**Jurisdiction and Venue**

6. The Court has jurisdiction to over this matter under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois; venue is proper under 28 U.S.C. § 1409(a). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

**Factual Allegations**

7. Aaron met Lorence in 2003; Aaron and Lorence have a child together; Aaron and Lorence had a romantic relationship for periods from 2003 through 2009.

8. For periods from 2005 through 2007, Aaron and Lorence resided together 2 N 030 Virginia St., Glen Ellyn, Illinois.

9. Lorence paid the rent for Aaron's and Lorence's residence at 2 N 030 Virginia St., Glen Ellyn, Illinois, with checks drawn on his former corporation Unique Recycling Services, Inc.'s business account.

10. Aaron currently continues to have personal contact with Lorence.

11. In 2004 and thereafter, Aaron worked as an agent for Lorence or Lorence's prior corporation Unique Recycling Services, Inc.; Lorence hired Aaron to work for him or his corporation.

12. In early 2005 and continuing thereafter, Aaron became aware that Lorence was not paying his creditors.

13. In early 2005 and continuing thereafter, Aaron became aware that Lorence was not paying United.

14. From late 2006 through May 2008, Aaron was unemployed.

15. On January 26, 2005, United instituted a collection action against Lorence based upon his failure to pay for the disposal of his miscellaneous waste and recyclable materials at United's transfer station in Cook County.

16. On June 9, 2005, United served Lorence with summons and complaint through abode service on Aaron; at the time, Aaron and Lorence shared the same abode at 2 N 030 Virginia St., Glen Ellyn, Illinois.

17. On December 1, 2005, the Illinois Secretary of State dissolved Lorence's former corporation Unique Recycling Service, Inc.; Lorence continued to collect and deposit miscellaneous waste and recyclable materials at transfer stations and/or recycling facilities after the dissolution.

18. On August 26, 2006, the Circuit Court of Cook County entered a judgment in favor of United Transfer and against Lorence in the amount of $44,666.07, Case No. 05 M1 104991.

19. The Circuit Court of Cook County found that United Transfer was entitled to collect a judgment for attorney's fees in its collection effort against Lorence.

20. On September 18, 2006, United served Lorence with a citation to discover assets through abode service on Aaron; at the time, Aaron and Lorence shared the same abode at 2 N 030 Virginia St., Glen Ellyn, Illinois.

21. The Circuit Court of Cook County eventually issued a body attachment for Lorence due to his refusal to respond to legal process.

22. On May 23, 2008, Unique Green's articles of organization were filed with the Illinois Secretary of State.

23. At some time after May 2008, Unique Green and Aaron started servicing former customers of Lorence.

24. For periods after May 2008, Lorence has maintained the trucks Unique Green and Aaron have used in their recycling and/or waste collection business.

25. In 2010, Aaron and Unique Green hired Lorence's brother Mark Lorence as an employee and agent; Mark Lorence has been an employee of the recycling and/or waste collection business for periods since that time.

26. Since 2008, Aaron and Unique Green have operated vehicles bearing the name "Unique Recycling Services" on them in their business.

27. For periods after taking possession of the vehicles, Aaron and Unique Green did not inquire as to removing the name "Unique Recycling Services" from them.

28. In 2008 and thereafter, Aaron and Unique Green have operated with the business phone number (847)-833-4455.

29. The phone number (847)-833-4455 is the former business phone number of Lorence.

30. Since the Circuit Court of Cook County entered judgment against Lorence and in favor of United Transfer, Lorence has not paid any significant amounts towards said judgment.

31. Since 2008, Lorence, Aaron, and Unique Green have all operated their business from the same address, namely, 4 N 211 Cavalry Drive, Bloomingdale, Illinois

32. In May or June 2008, Lorence contacted Tom Kirk of Kirk C&D Recycling, Inc. about the purchase of a 1985 Mack vehicle.

33. In May or June 2008, Lorence inspected the 1985 Mack vehicle; Lorence then gave cash consideration to Tom Kirk in exchange for the vehicle.

34. Lorence, Aaron, and Unique Green agreed that the title to the 1985 Mack would be placed in Unique Green.

35. Lorence, Aaron, and Unique Green agreed the 1985 Mack would be used in the business operations of Unique Green and Aaron.

36. Since the purchase, the 1985 Mack has been used in the business operations of Unique Green and Aaron.

37. At some time after June 1, 2006, Lorence owned a 1988 Ford vehicle.

38. Upon information and belief, Lorence transferred the 1988 Ford to Aaron and Unique Green.

4

39. Unique Green did not provide Lorence any consideration for his transfer of the 1988 Ford vehicle.

40. Aaron did not provide Lorence any consideration for his transfer of the 1988 Ford vehicle.

41. As of July 9, 2010, the 1988 Ford vehicle remained titled in Unique Recycling Service, Inc.

42. Lorence, Aaron, and Unique Green agreed the 1988 Ford would be used by Unique Green and Aaron in their business operations.

43. Since taking possession of the 1988 Ford vehicle, Unique Green and Aaron have used 1988 Ford vehicle in their business operations.

44. In June 2008, Lorence transferred a 1989 Ford vehicle to Aaron and Unique Green.

45. Unique Green did not provide Lorence any consideration for his transfer of the 1989 Ford vehicle.

46. Aaron did not provide Lorence any consideration for his transfer of the 1989 Ford vehicle.

47. Lorence, Aaron, and Unique Green agreed that the title to the 1989 Ford would be placed in Unique Green.

48. Lorence, Aaron, and Unique Green agreed the 1989 Ford would be used by Unique Green in its business operations.

49. Since taking possession of the 1989 Ford vehicle, Unique Green and Aaron have used 1989 Ford vehicle in their business operations.

50. In June 2007, Lorence purchased a 1991 International truck.

51. Ben Divito is an individual residing in Illinois who owned and operated a corporation Vincent Divito, Inc. (Ben Divito and Vincent Divito, Inc. will be referred to collectively as "Divito".)

52. Divito acted as a landlord to Lorence's business for periods in 2006 through 2008.

5

53. Before June 2008, Lorence incurred debts to Divito for the use of fuel, welding services, motor oil, heating oil, and rent.

54. Before June 2008, Divito seized Lorence's 1991 International vehicle as a result of Lorence's debts to Divito.

55. Divito never owned the 1991 International vehicle.

56. Lorence paid funds to Divito in order to obtain the release of the 1991 International truck.

57. Unique Green did not provide Divito consideration for his release of the 1991 International truck.

58. Aaron did not provide Divito any consideration for his release of the 1991 International truck.

59. As of July 9, 2010, the 1991 International vehicle remained titled in URS Inc.

60. Lorence, Aaron, and Unique Green agreed the 1991 International would be used by Unique Green and Aaron in their business operations.

61. Since taking possession of the 1991 International vehicle, Unique Green and Aaron have used the 1991 International vehicle in their business operations.

62. In May 2007, Lorence purchased a 1993 Peterbilt vehicle.

63. Before June 2008, Divito seized Lorence's 1993 Peterbilt vehicle as a result of Lorence's debts to Divito.

64. Divito never owned the 1993 Peterbilt vehicle.

65. Lorence paid funds to Divito in order to obtain the release of the 1993 Peterbilt vehicle.

66. Unique Green did not provide Divito any consideration for his release of the 1993 Peterbilt vehicle.

67. Aaron did not provide Divito any consideration for his release of the 1993 Peterbilt vehicle.

68. As of July 9, 2010, the 1993 Peterbilt vehicle remained titled in URS Inc.

69. After June 2008, Lorence, Aaron, and Unique Green agreed the 1993 Peterbilt would be used by Unique Green and Aaron in their business operations.

### Count I – Nondischargeability of Aron's's Debt to United under § 523(a)(2)

1-69.  Plaintiff hereby realleges ¶¶ 1-69 above as ¶¶ 1-69 of Count I.

70.  11 USC § 523(a)(2)(A) provides:

"A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

71.  This Count is being brought because under federal law, Debtor Tammy Aaron's debt to United Transfer is non-dischargeable under § 523(a)(2)(A).

72.  Since 2005, Aaron obtained certain business property that would have been subject to United Transfer's judgment against Lorence by actual fraud.

73.  Aaron received such business property without receiving adequate consideration for the property.

72.  Aaron was aware at the time of the transfers of the business property that Lorence owed debts to United.

73.  Aaron accepted the transfers of the business property with the intent to shield the assets from United and with the intent to defraud United.

74. Aaron's acceptance of the business property has prevented United from collecting Lorence's debts to it.

75.  Aaron's participation in the fraud on United has created a new debt to United.

76.  Aaron's actions in receiving the business assets from Lorence while knowing that United was owed a valid debt from Lorence constitutes an actual fraud under 11 USC  § 523(a)(2).

    **WHEREFORE**, United Transfer requests the following relief:

7

(a) A finding that Debtor Tammy Aaron violated 11 U.S.C. § 523(a)(2)(A) by committing an actual fraud upon United Transfer in conducting the transfer of business assets that would have been subject to collection by United;

(b) A finding that Debtor Tammy Aaron is not entitled to discharge of all of her liabilities to United because of her numerous violations of 11 U.S.C. **§** 523(a)(2)(A);

(c) A finding that United Transfer Inc. is entitled to collect its attorneys fees and costs under Fed. R. Bank. 7054(b) related to its collection efforts against Tammy Aaron; and

(d) For all other relief the Court deems just.

### Count II – Nondischargeability of Aaron's Debt to United under § 523(a)(6)

1-69. Plaintiff hereby realleges ¶¶ 1-69 of Count I as ¶¶ 1-69 of Count II.

70. 11 USC § 523(a)(6) provides:

"A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity…"

71. This Count is being brought because, under federal law, Debtor Tammy Aaron's debt to United Transfer is non-dischargeable under § 523(a)(6).

72. At the time of Aaron's fraud upon United, United had an enforceable judgment against Lorence.

73. United sought to enforce its judgment against Lorence by serving him, through Aaron, with a citation to discover assets.

72. The service of the Citation on September 18, 2006 upon Lorence effected a lien upon all of his non-exempt personal property for the benefit of United.

73. The Citation contained the following statement:

"YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtor or to which the judgment debtor may be entitled or which may be acquired by or become due to the judgment debtor and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to the judgment debtor, until further order of court or termination of the proceedings. You are not required to withhold the payment of any money beyond double the amount of the judgment."

8

74. On and after September 18, 2006, Aaron was aware that Lorence was prohibited from allowing any transfers of any non-exempt property that he owned, which he may be entitled to, or which he may acquire, until further order of court or the court's termination of the citation proceedings.

75. United's lien upon Lorence's assets remains remained in full force and effect, and has not been discharged or terminated.

76. Aaron is aware that United effected a lien on Lorence's business assets.

77. Aaron is aware that Lorence did not respond to process in the citation proceedings in Cook County Circuit Court.

78. The assets Lorence transferred to Aaron were not exempt from United's lien.

79. Supply's lien upon the business assets Aaron received constitutes a property right of Supply's.

80. Since September 18, 2006, Aaron has injured United's lien in that she has received and/or disposed of property that is subject to United's lien.

81. Aaron's actions that caused injury to United's lien were intentional

82. Aaron's actions in injuring United's lien caused United injury.

83. Aaron's actions in injuring United's lien United's property were willful.

84. Aaron's actions in injuring United's lien were malicious.

85. The elements for finding a debt non-dischargeable under §§ 523(a)(6) are present.

   **WHEREFORE**, United Transfer requests the following relief:

(a) A finding that Debtor Tammy Aaron violated 11 U.S.C. § 523(a)(6) by willfully and maliciously injuring United Transfer's property;

(b) A finding that Debtor Tammy Aaron is not entitled to discharge of any of her liabilities to United because of her violations of 11 U.S.C. **§** 523(a)(6); and

(c) A finding that United Transfer Inc. is entitled to collect its attorneys fees and costs under Fed. R. Bank. 7054(b) related to its collection efforts against Tammy Aaron; and

(d) For all other relief the Court deems just.

Dated:   August 27, 2014

/s/  **James M. Dore**

**James M. Dore (IL ARDC #6296265) and John N. Dore (IL ARDC # 0661007)**
*Counsel for United Transfer, Inc. – Creditor*
134 N. La Salle St., Suite 1208
Chicago, IL   60602
P:  312.726.8401  F:  312.726.1461
E: Jmdore70@sbcglobal.net